UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEREMY DARNELL MORTON,

      Defendant-Movant,

v.

UNITED STATES OF AMERICA,

      Plaintiff-Respondent.

_____/

Case No. 1:22-cv-398

Honorable Paul L. Maloney

## OPINION AND ORDER

Currently pending before the Court is Defendant-Movant Jeremy Darnell Morton ("Defendant")'s *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Defendant has also filed a motion for a hearing. (ECF No. 13.) For the reasons set forth below, Defendant's motions will be denied.

## I.    Background

On April 16, 2019, the government charged Defendant via a Criminal Complaint with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Crim. Compl., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 1). In the Criminal Complaint, Special Agent Bartholomew of the Federal Bureau of Investigation set forth that on September 17, 2015, officers from the Michigan State Police were assisting the Muskegon Heights Police Department in investigating two homicides that had occurred between August 29 and September 5, 2015. *See id.*, (ECF No. 1-1, PageID.2). Defendant was a suspect in those homicides, and officers were conducting surveillance of a Quality Inn after learning that Defendant was staying there with his girlfriend. *See id.*

Officers saw Defendant's girlfriend drive away from the motel and initiated a traffic stop, during which the girlfriend admitted that Defendant was staying with her. *See id.* Officers subsequently learned that the girlfriend had texted Defendant to tell him that she was being pulled over at about the time the stop was initiated. *Id.*

 Investigators saw Defendant exit the motel, cross the road, and enter the Comfort Inn on the other side of the street. *See id.*, (ECF No. 1-1, PageID.3). Investigators entered the lobby of the Comfort Inn, where they were approached by the manager and asked if they "were looking for a black male with 'braids' (such as [Defendant] wore)." *Id.* The manager told officers that he had seen the male enter the men's bathroom off of the first-floor hallway. *Id.* Officers found that the bathroom in question was unoccupied, but that the overhead light was on. *Id.* The manager told officers that the light was motion-activated. *Id.*

Shortly thereafter, officers found Defendant as he moved from a stairwell into a hallway. *Id.* They patted Defendant down for weapons and found none, but did find $8,380.00 on Defendant's person. *Id.* Defendant indicated that "he was holding a 'couple thousand' in cash that belonged to his mother." *Id.*

Officers then reviewed surveillance images from the Comfort Inn. *Id.* Those images showed Defendant entering the Comfort Inn and approaching the bathroom. *Id.* Defendant entered the bathroom and left, then entered the bathroom a second time and came out 22 seconds later. *Id.* Review of the video indicated that between 12:30 p.m. and 1:53 p.m., the only individuals who entered the bathroom were Defendant and Michigan State Police officers. *Id.*

One of the Michigan State Police troopers returned to the bathroom and searched it. *Id.* The officer found a clear bag containing suspected narcotics in the toilet water tank. *Id.* Half of the substance inside had become wet because of a small hole in the bag. *Id.* The bag weighed 12 grams

and field-tested positive for heroin. *Id.* Subsequent laboratory testing indicated that the bag contained 11.23 grams of heroin. *Id.* The toilet lid was tested for fingerprints, one of which was determined to have been left by Defendant. *Id.*

Defendant was arrested pursuant to the Criminal Complaint on April 24, 2019. On April 26, 2019, attorney Sean Tilton was appointed to represent him. Defendant appeared before Magistrate Judge Ray Kent for a preliminary hearing on April 29, 2019. After hearing testimony from Detective Trooper Jason Hartman, Magistrate Judge Kent concluded that probable cause existed to support the criminal complaint, and he bound over Defendant for further proceedings before a grand jury. *See* Order, *id.* (ECF No. 10).

On May 7, 2019, a grand jury returned a one-count Indictment charging Defendant with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Indictment, *id.* (ECF No. 11). The next day, the government filed an Information and Notice of Prior Felony Drug Conviction, noting that Defendant had a previous conviction in this Court, in Criminal Case No. 1:08-cr-287, for distribution of cocaine base, and that Defendant was therefore subject to enhanced penalties set forth in 21 U.S.C. § 841(b)(1)(C) if convicted of the offense set forth in the Indictment. *See* Information, *id.* (ECF No. 15).

On June 3, 2019, Defendant, through counsel, filed a motion to suppress, arguing that all evidence obtained "through a search of [Defendant's] person, cellular phone, and hotel room" be suppressed because Defendant "was arrested without probable cause, there was not a warrant to search his cell phone, and an affidavit in support of a search warrant did not establish a nexus between the illegal activity and the items or place to be searched." *See* Mot. Suppress, *id.* (ECF No. 20, PageID.34). The Court held a hearing on the motion on July 29, 2019. Following testimony and argument, the Court orally denied Defendant's motion to suppress and noted that a written

opinion would issue. *See* Mot. Hr'g Tr., *id.* (ECF No. 64, PageID.900). The Court issued that opinion on November 21, 2019. *See* Supp. Op., *id.* (ECF No. 51).

Prior to trial, Defendant, through counsel, filed a motion in limine to exclude 404(b) evidence. *See* Mot., *id.* (ECF No. 33). Specifically, Defendant requested that the government be precluded from introducing evidence of Defendant's "prior drug activity that occurred in 2007 and 2008, seven and eight years before the instant offense." *Id.*, (ECF No. 33, PageID.132). Defendant also filed a motion to exclude any testimony regarding the unrelated homicide investigation that led to Defendant's arrest on September 17, 2015. *See* Mot., *id.* (ECF No. 34). In an order entered on August 7, 2019, the Court granted in part and denied in part Defendant's motion in limine to exclude 404(b) evidence. *See* Order, *id.* (ECF No. 38). Specifically, the Court prohibited the government from introducing evidence of Defendant's prior drug activity that occurred in April of 2007 and February of 2009, but noted that the government could introduce evidence of such activity that occurred in May or June of 2008. *See id.* Defendant's jury trial occurred over August 12 and 13, 2019. On August 13, 2019, the jury returned a guilty verdict. *See* Jury Verdict, *id.* (ECF No. 46).

Prior to sentencing, a Probation Officer prepared a Presentence Investigation Report (PSR). *See* PSR, *id.* (ECF No. 52). Of note, the Probation Officer concluded that Defendant was a career offender, pursuant to Sentencing Guidelines § 4B1.1(b)(2) because he had at least two prior felony convictions for either crimes of violence or controlled substances offenses. *See id.*, (ECF No. 52, PageID.364). Because of that determination, Defendant's total offense level went from 14 to 34. *See id.*, (ECF No. 52, PageID.363–364). The career offender determination was premised upon Defendant's 2007 conviction in the Muskegon County Circuit Court for delivery/manufacture of

less than 50 grams of cocaine, as well as his prior federal conviction for distribution of cocaine base. *See id.*, (ECF No. 52, PageID.367, 369).

Based upon a total offense level of 34 and a criminal history category of VI, the Probation Officer noted that Defendant's Sentencing Guidelines range called for 262 to 327 months of incarceration. *See id.*, (ECF No. 52, PageID.379). The Probation Officer noted that Defendant, through counsel, had objected to the career offender designation and that the Court would have to resolve that issue. *See id.*, (ECF No. 52, PageID.383).

Prior to sentencing, Defendant, through counsel, filed a motion for a downward variance pursuant to 18 U.S.C. § 3553(a). *See* Mot., *id.* (ECF No. 53). In response, the government requested an upward variance. *See* Resp., *id.* (ECF No. 55). The parties appeared before the Court for Defendant's sentencing on December 9, 2019. At that time, the parties presented argument regarding the career offender designation. Ultimately, the Court overruled the objection, noting that Defendant had the requisite priors for the career offender designation and that his guidelines called for 262 to 327 months of incarceration. *See* Sentencing Tr., *id.* (ECF No. 61, PageID.450). The Court also recognized the government's request for a sentence at or near the statutory maximum, but noted that it would "impose a sentence at the low end of the advisory guideline range after applying the career offender guideline to [Defendant]." *Id.*, (ECF No. 61, PageID.463). The Court sentenced Defendant to 262 months of incarceration, followed by 10 years of supervised release.[1] *See* J., *id.* (ECF No. 57).

Defendant appealed, and the Sixth Circuit consolidated his appeal with Defendant's appeal of his supervised release revocation and sentence in Criminal Case No. 1:08-cr-287. *See United*

---

[1] The Court directed that Defendant's sentence be served consecutively to the revocation of supervised release sentence imposed in Criminal Case No. 1:08-cr-287. *See* J., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 57, PageID.426).

*States v. Morton*, 843 F. App'x 699 (6th Cir. 2021). On appeal, Defendant reiterated his arguments concerning his career offender designation. *See id.* at 701–02. Defendant also argued that this Court erred in denying his suppression motion and erred in allowing the government to present evidence of his 2008 conviction for distribution of cocaine base. *See id.* at 702. Defendant averred further that the jury venire violated his constitutional rights because there were no African-Americans on the jury. *See id.* at 703. Finally, Defendant argued that this Court abused its discretion by allowing the government to reopen its case after Defendant moved for a judgment of acquittal on the basis that no witness had actually identified him to allow Detective Hartman to identify Defendant. *See id.* at 705. The Sixth Circuit affirmed Defendant's conviction and sentence. *See id.* at 707. The United States Supreme Court denied Defendant's petition for a writ of certiorari on June 1, 2021. *See Morton v. United States*, 141 S. Ct. 2713 (2021).

Defendant filed his § 2255 motion (ECF No. 1) on May 3, 2022. In an order (ECF No. 4) entered the next day, the Court ordered the government to file a response to the motion. After receiving an extension of time to do so (ECF Nos. 6, 8), the government filed its response (ECF No. 14) on August 8, 2022. On June 9, 2022, attorney Ray E. Richards II, who represented Defendant on appeal, filed a declaration addressing Defendant's claims of ineffective assistance of appellate counsel. (ECF No. 9.) Defendant filed a motion for a hearing on June 13, 2022. (ECF No. 13.) After receiving an extension of time to do so (ECF Nos. 15, 16), Defendant filed his reply (ECF No. 17) on September 19, 2022. Defendant also filed two notices of supplemental authority on December 27, 2022, and January 17, 2023. (ECF Nos. 18, 20.)

## II.     Analysis

### A.     Legal Standards

#### 1.     Section 2255 Proceedings in General

A federal prisoner may challenge his sentence by filing in the district court where he was sentenced a motion under 28 U.S.C. § 2255. A valid § 2255 motion requires a movant to show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 affords relief for a claimed constitutional error only when the error had a substantial and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Non-constitutional errors generally are outside the scope of § 2255 relief, and they should afford collateral relief only when they create a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks omitted). As a general rule, a claim not raised on direct review is procedurally defaulted and may not be raised on collateral review absent a showing of either (1) cause and actual prejudice; or (2) actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart*, 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).

#### 2.     Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if

Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

**B.    Discussion**

Defendant raises the following eleven claims of ineffective assistance in his § 2255 motion:

I.      Ineffective assistance on the part of both counsel at sentencing and on direct appeal by failing to apply existing decisions in competent legal fashions in opposition to the district court's erroneous [career] offender designation that likely would have resulted in a lesser guidelines sentence between 33-41 months rather than 262-328 months imprisonment.

II.     Trial counsel[] Mr. Tilton and Mr. Fisher rendered ineffective assistance of counsel during [the] jury selection process at trial in this case.

III.    Ineffective Assistance. Counsel failed to challenge [the] federal complaint and probable cause finding dated April 16, 2019 for constitutional violations that include[] "sham prosecution."

IV.     Ineffective assistance of counsel for failing to demand a mistrial for jury bias after district court allowed evidence about "crack-cocaine."

V.      Ineffective assistance of counsel by failing to object to jury instructions that constitute a[] constructive amendment of the Indictment after already [having] been returned by the grand jury.

VI.     Trial counsel was ineffective . . . when failing to object to ailing jury instruction that so infected the trial that [Defendant's] resulting conviction violates due process and D[e]fendant's Sixth Amendment right to a fair trial regarding his right not to testify or present any evidence.

VII.    Trial counsel was ineffective . . . for failing to object to ailing jury instructions that so infected the trial that [Defendant's] resulting conviction viol[a]tes due process and right to a fair trial regarding possible guilt of others.

VIII.   Ineffective assistance of counsel for failing to object to jury instructions that so infected the trial that [Defendant's] resulting conviction violates due process and the right to a fair trial regarding what the law requires the government to prove as to the element of intent.

IX.     Trial counsel was ineffective . . . by failing to challenge [the] officers['] investigatory stop of [Defendant] [as] a violation of his Fourth Amendment right against unreasonable searches and seizures when officers

9

impermissibly prolonged their investigatory stop and created a [fictitious] safety concern to justify searching [Defendant] for weapons without his consent.

X.    Trial counsel was ineffective for failing to move for [a] judgment of acquittal upon the ground that the Court allowed the government to reopen its case after it rested to recall a government witness to testify on the issue of identity and the Court had failed to readminister the oath of that witness but simply stated the witness was still under [his] previous oath when [he] had been dismissed from testifying.

XI.    Trial counsel was ineffective for not requesting a jury instruction as to physical or material evidence that was not tested by law enforcement officers for DNA results on the issue of identity and reasonable doubt.

(§ 2255 Mot., ECF No. 1, PageID.3–45 (capitalization corrected).)

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S.460, 477 (2000) (internal quotation marks omitted). Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

### C. Ground I—Ineffective Assistance Regarding Career Offender Determination

In ground I, Defendant asserts that counsel at sentencing and on direct appeal were ineffective "by failing to apply existing decisions in competent legal fashions in opposition to the district court's erroneous [career] offender designation that likely would have resulted in a lesser guidelines sentence between 33-41 months rather than 262-327 months [of] imprisonment." (§ 2255 Mot., ECF No. 1, PageID.3.) Specifically, Defendant suggests that counsel should have relied upon Sixth Circuit cases holding that Mich. Comp. Laws § 333.7401 "criminalized attempt offenses and therefore could not count as a controlled substance offense in this case for career offender purposes." (*Id.*, PageID.4.) Overall, Defendant argues that because the Michigan statute criminalizes attempt crimes, which are excluded from the federal Sentencing Guidelines' definition of controlled substances offenses, he should not have been designated a career offender. (*Id.*, PageID.9.)

In his sentencing memorandum, attorney Tilton relied upon the Sixth Circuit's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), to argue that Defendant was not a career offender. *See* Sentencing Memo., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 54, PageID.390). Notably, in *Havis*, the Sixth Circuit held that the Sentencing Guidelines' definition of a controlled substance offense does not include attempt crimes. *See Havis*, 927 F.3d at 387. Ultimately, at sentencing, the Court overruled Defendant's objection to the career offender designation, concluding that both of Defendant's prior controlled substances offense were proper requisites for application of the designation. *See* Sentencing Tr., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 61, PageID.450).

On appeal, Defendant reiterated his argument that his two prior drug offenses did not qualify as controlled substances offenses for purposes of the career offender designation. *See Morton*, 843 F. App'x at 701. The Sixth Circuit disagreed, stating:

11

> On appeal, Morton reiterates the argument he made below, namely that his two prior drug offenses are not "controlled substance offenses" under U.S.S.G. § 4B1.2(b) because both the Michigan and federal offense define the term "delivery" to include attempted offenses, which, following this Court's recent decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), are not covered by § 4B1.2(b). However, as he implicitly concedes in his reply brief, this court recently rejected that argument in *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (per curiam), *cert. denied*, No. 20-6282, —— U.S. ——, 141 S. Ct. 1005, 208 L. Ed. 2d 551 (Jan. 11, 2021); *see also United States v. Garth*, 965 F.3d 493, 496–98 (6th Cir. 2020) (same; applying Tennessee law). As *Thomas* explains, the logic of *Havis* does not apply where an attempted action (here attempted transfer) constitutes a completed crime (delivery). *Thomas*, 969 F.3d at 585. Both statutes qualify as controlled-substance offenses under U.S.S.G. § 4B1.2, and the district court properly relied on them to classify Morton as a career offender.

*Morton*, 843 F. App'x at 701–02. Moreover, in 2021, the Sixth Circuit has also concluded that convictions under the Michigan statute in question—Mich. Comp. Laws § 333.7401—qualify as controlled substances offenses predicates for purposes of the career offender designation. *See United States v. Booker*, 994 F.3d 591, 595–96 (6th Cir. 2021).

In light of the foregoing, the Court properly determined that Defendant's prior drug offenses qualified as predicates for the career offender designation. Defendant does not describe, and the Court does not discern, how any further argument by either trial or appellate counsel would have changed the outcome of either Defendant's sentencing by this Court or the Sixth Circuit's rejection of his challenge to the career offender designation. Defendant, therefore, is not entitled to relief with respect to ground I.

### D. Ground II—Ineffective Assistance During Jury Selection

As his second ground for relief, Defendant contends that attorneys Tilton and Fisher rendered ineffective assistance during jury selection. (§ 2255 Mot., ECF No. 1, PageID.11.) According to Defendant, the jury venire for his trial violated the Sixth Amendment because it did not include any African-Americans. (*Id.*) Defendant suggests that as of August 2019, 21.2% of Kalamazoo, Michigan's population identified as black or African-American, and that counsel

12

should have brought the complete absence of African-Americans from the jury venire to the Court's attention before *voir dire* began. (*Id.*, PageID.12.) Defendant acknowledges that attorney Tilton raised the issue after the jury was seated and after the Court gave opening instructions. (*Id.*, PageID.13.) Defendant, however, argues that attorneys Fisher and Tilton "admitted they simply did not know what to do but only to proceed ahead anyway in selecting the jury." (*Id.*)

It is well established that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial" and "is fundamental to the American system of justice." *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). The fair cross-section requirement, however, applies to the venire from which a jury is drawn, and not the petit jury itself. *See id.* at 538 (noting that the Court was "impos[ing] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population"). To establish a prima facie violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

As an initial matter, Defendant raised his Sixth Amendment challenge to the jury venire on direct appeal, and the Sixth Circuit rejected it, noting that Defendant had "not offered any factual evidence of a systematic problem with the jury pool selection process." *Morton*, 843 F. App'x at 704. Defendant had not corrected that deficiency in his § 2255 motion. To set forth a violation of the Sixth Amendment's fair cross-section requirement, Defendant must "show that the underrepresentation of the [distinctive group], generally and on his venire, was due to their systematic exclusion in the jury-selection process." *Duren*, 439 U.S. at 366. "[D]efendants 'must

13

show more than that their particular panel was unrepresentative[;] *Duren* states that we look at the 'venires' from which 'juries' are selected." *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) (emphasis added).

Here, Defendant again focuses only on his jury venire panel to argue that the jury selection process used by the Western District of Michigan violates the Sixth Amendment. Defendant, however, undercuts his own claim by acknowledging that in a different trial before the undersigned that was held shortly after Defendant's trial, African-Americans were included in both the jury venire and the petit jury. (§ 2255 Mot., ECF No. 1, PageID.15.) To the extent Defendant believes he was tried by a biased jury simply because no African-Americans were present in the jury venire, the Court notes that "[d]efendants are not entitled to a jury of any particular composition." *Taylor*, 419 U.S. at 538.

"[M]ore than a general assertion is required to satisfy the element of systemic exclusion." *United States v. Allen*, 160 F.3d 1096, 1104 (6th Cir. 1998). Defendant's focus on the makeup of his own jury venire amounts to no more than a general assertion. Because Defendant's challenge regarding the jury venire and systemic exclusion is entirely conclusory, the Court cannot agree that counsel was ineffective for failing to challenge it. Defendant, therefore, is not entitled to relief with respect to ground II.

### E.    Ground III—Failure to Challenge Criminal Complaint and Probable Cause Determination

In ground III, Defendant faults counsel for failing to "challenge [the] federal complaint and probable cause finding dated April 16, 2019 for constitutional violations that include[] 'sham prosecution.'" (§ 2255 Mot., ECF No. 1, PageID.17.) Defendant suggests that the criminal complaint and affidavit in support deliberately omitted the fact that Defendant had been imprisoned since 2015 on various state charges and that he never received a probable cause

determination in state court within 48 hours of his arrest. (*Id.*, PageID.17–18.) Defendant suggests that federal and state authorities colluded to "achieve via federal prosecution what the state could not after the MCL 333.7401 charges were dismissed on April 24, 2019." (*Id.*, PageID.18.) Overall, Defendant contends that if attorney Tilton investigated further, he "would have discovered ample evidence . . . proving separate sovereigns essentially manipulated another sovereign into prosecuting [Defendant] in reaction to dismissal of state murder and drug charges." (*Id.*, PageID.23.)

As an initial matter, Defendant cannot demonstrate any prejudice from counsel's failure to object to any perceived irregularities in the criminal complaint and the probable cause determination supporting that complaint. Although Defendant was arrested pursuant to the criminal complaint, he was subsequently charged by the Indictment returned by the grand jury. Defendant offers no suggestion that any error occurred during the grand jury proceeding. Thus, any defects in the criminal complaint were subsequently cured by the return of the Indictment by the grand jury. *See United States v. Williams*, 85 F. App'x 341, 348-49 (4th Cir. 2004) (rejecting the defendant's challenge to any defects in the criminal complaint because the defendant failed to demonstrate how those defects rendered the subsequent indictment returned against him defective); *cf. United States v. Bok*, No. 95 CR 403 (JGK), 1997 WL 148815, at *3 (S.D.N.Y. Mar. 27, 1997) ("[E]ven if the original Indictment was in some way defective, the returning of a Superseding Indictment by a different grand jury cures any prejudice to the defendant that may have been caused by an improper original Indictment.").

Moreover, the Court cannot agree with Defendant that counsel was ineffective for failing to argue that Defendant's federal prosecution amounted to a sham prosecution. "[S]tate and federal authorities, as independent sovereigns, generally may independently prosecute the same person

for similar conduct without offending the double-jeopardy bar." *United States v. Djoumessi*, 538 F.3d 547, 550 (6th Cir. 2008). However, "a State cannot sidestep the constraints of the Double Jeopardy Clause through a 'sham' prosecution by an ostensibly different sovereign." *Id.* (citing *Bartkus v. Illinois*, 359 U.S. 121, 122–24 (1959)).

The "sham prosecution" exception is a narrow one and, as of 2020, the Sixth Circuit had "never ruled that a prosecution violated double jeopardy protections under [*Bartkus*'] 'sham prosecution' theory." *Id.* (quoting *United States v. Clark*, 254 F. App'x 528, 533 (6th Cir. 2007)). To prove that a sham prosecution occurred, Defendant must make "the startling showing that the Federal Government was 'merely a tool' of the State of Michigan in undertaking this prosecution, somehow ceding its sovereign authority to prosecute and acting only because the State told it to do so." *Id.* (citing *Bartkus*, 359 U.S. at 123). Defendant has not made that requisite showing. His suggestion is based merely upon speculation and, at most, shows cooperation between the federal and State authorities. Such cooperation, however, does not sustain a conclusion that a sham prosecution occurred. *See Bartkus*, 359 U.S. at 123–24; *see also United States v. Rashed*, 234 F.3d 1280, 1284 (D.C. Cir. 2000) ("*Bartkus* acknowledges that extensive law enforcement and prosecutorial cooperation between two sovereigns does not make a trial by either a sham.").

In sum, Defendant has failed to show that counsel was ineffective for failing to challenge any perceived irregularities in the criminal complaint and for failing to argue a "sham prosecution" theory. Defendant, therefore, is not entitled to relief with respect to ground III.

## F.     Ground IV—Failure to Request Mistrial

Next, Defendant faults counsel for failing to request a "mistrial for jury bias after [the] district court allowed evidence about 'crack cocaine.'" (§ 2255 Mot., ECF No. 1, PageID.24.) Defendant contends that the Court's pre-trial ruling regarding the admissibility of his 2008 conviction for distribution of cocaine base allowed the government to elicit testimony regarding

Defendant's entry of a guilty plea "in the past to criminal distribution, but nothing in that ruling allowed for any mentioning [of] the kind or type of drugs or that the past offense conduct would be admitted." (*Id.*) According to Defendant, counsel should have moved for a mistrial when the government "described to the jury in step-by-step detail [Defendant's] 2008 conviction for Cocaine Base Distribution . . . when government counsel provided conduct of specific details delved into three separate crack cocaine transactions." (*Id.*, PageID.26.) Defendant acknowledges that he stipulated to the fact of his prior conviction, but that the stipulation did not "entail specific drug type or quantities." (*Id.*)

The record reflects that prior to jury selection, the government sought clarification on the matter of whether it could elicit testimony that Defendant had been convicted of distribution of cocaine base in 2008. *See* Trial Tr., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 62, PageID.476–477). Attorney Tilton noted that he could not recall whether the Court had previously ruled whether the conviction itself could be admitted. *See id.*, (ECF No. 62, PageID.477). Counsel argued that the "conduct speaks for itself as far as the reasons the Court allowed the 404(b) evidence to come in. We don't think the conviction itself adds anything." *Id.* The Court set forth as follows:

> I don't remember addressing that either. To the extent both of you don't have a memory of that, that's my understanding, too. But it just seems to me that the fact of the conviction is one fairly simple way of getting the 404(b) evidence in, and to the extent that it's a plea-based conviction, obviously it's as a result of admissions out of the mouth of the defendant, which in the Court's judgment is probably the most probative evidence on the issue and avoids any notion of a trial within a trial to the extent that that's been argued, which I'm not sure it has. But in any event, I think that's the most efficient way to address it.

*See id.*, (ECF No. 62, PageID.478). Subsequently, during trial, the government read numerous stipulations into the record before the jury. One of those stipulations set forth:

> "On May 8, 2008, a federal agent and a confidential informant drove to Mr. Morton's residence. The agent provided the informant with $150, and the informant

17

> purchased 1.07 grams of cocaine base from Morton in two plastic baggies. On May
> 29, 2008, the agent purchased 4.01 grams of cocaine base packaged in four small
> plastic baggies from Morton for $300. The agent watched Morton take the baggies
> out of his pocket. On June 4, 2008, the agent purchased 5.34 grams of cocaine base
> packaged in eight small plastic baggies from Morton for $500. In each instance,
> Morton carried the drugs on his person. Morton pled guilty to distribution of
> cocaine base."

*Id.*, (ECF No. 62, PageID.706). Attorney Tilton agreed to the stipulation. *Id.*, (ECF No. 62,

PageID.707).

In light of the stipulation as well as the Court's ruling before jury selection that Defendant's

2008 conviction itself could be mentioned to the jury, the Court cannot agree with Defendant that

counsel was ineffective for not requesting a mistrial. Any motion for a mistrial on that basis would

have been denied. Moreover, Defendant challenged the admission of his prior conviction and the

information regarding the three cocaine base transactions on appeal, and the Sixth Circuit rejected

his argument. *See Morton*, 843 F. App'x at 702–04. In light of this record, counsel was not

ineffective for failing to request a mistrial, and Defendant is not entitled to relief with respect to

ground IV.

### G. Ground IX—Failure to Assert Fourth Amendment Argument

As his ninth ground for relief, Defendant faults counsel for not challenging the

investigatory stop officers conducted of Defendant as violating Defendant's Fourth Amendment

rights. (§ 2255 Mot., ECF No. 1, PageID.39.) Defendant suggests that the stop was unconstitutional

because officers "impermissibly prolonged their investigatory stop and created a [fictitious] safety

concern to justify searching [Defendant] for weapons without his consent." (*Id.*) Although

Defendant recognizes that counsel did file a motion to suppress, he contends that counsel should

have argued for the entire stop and arrest to be invalidated. (*Id.*)

The Supreme Court has noted that "[w]here defense counsel's failure to litigate a Fourth

Amendment claim competently is the principal allegation of ineffectiveness, the defendant must

also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019). As discussed below, Defendant has not made that showing.

A review of the motion to suppress filed by Defendant's counsel reveals that counsel argued for suppression on the basis that: (1) officers lacked probable cause to arrest Defendant at the Comfort Inn; (2) officers could not detain or search Defendant pursuant to a previously-issued search warrant because Defendant was not at the Quality Inn when stopped and arrested; and (3) Defendant's phone was not within the purview of the search warrant. *See* Mot. Suppress, *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 20, PageID.39). During the hearing on Defendant's motion, the Court heard testimony from Detective Hartman. *See* Hr'g Tr., *id.* (ECF No. 64). Afterwards, the government argued that even if the Court determined that probable cause did not exist for Defendant's detention and arrest, officers had reasonable articulable suspicion to conduct a *Terry* stop of Defendant. *See id.*, (ECF No. 64, PageID.877). They noted further that officers had reasonable suspicion to frisk Defendant for weapons because they had information that Defendant had recently possessed ammunition and a firearm after the shootings in Muskegon. *See id.* The government further argued that Defendant's detention was not unreasonably prolonged. *See id.*, (ECF No. 64, PageID.878–879).

In response to the government's arguments, attorney Tilton argued that the *Terry* stop was not permissible because there was no reasonable suspicion that Defendant had committed or was about to commit a crime. *See id.*, (ECF No. 64, PageID.886). Counsel asserted that Defendant had been seen using a public hotel bathroom and that the manager had not indicated that Defendant

19

"had done anything illegally." *Id.* Counsel argued further that there was no articulable suspicion that Defendant was armed that day. *See id.*, (ECF No. 64, PageID.887).

Ultimately, the Court denied Defendant's motion to suppress, stating, in pertinent part:

> All right. Well, I'm going to deny the motion. I haven't decided for myself whether there is probable cause to arrest, and I'm going to review my notes before I make a determination on that particular aspect of the government's argument. But looking at this process narrowly, the Court is satisfied that there was articulable suspicion for purposes of a *Terry* stop in the hallway of the Comfort Inn. The tape clearly shows the officers patting down the outside of the defendant's clothing consistent with the parameters of the *Terry* stop.

*See id.*, (ECF No. 64, PageID.898). The Court concluded that there "was very significant law enforcement concern regarding the safety of the officers as they were going to hit the door of Room 106 at the Quality Inn, to justify the continued detention of [Defendant] for purposes of safely executing the search warrant." *Id.*, (ECF No. 64, PageID.899). The Court noted further that it would issue a written opinion on the issue. *Id.*, (ECF No. 64, PageID.900). In that opinion, the Court noted that Detective Hartman and the other officers who encountered Defendant "had probable cause to arrest him, which provides an independent rationale for denying the motion to suppress." *See* Supp. Op., *id.* (ECF No. 51, PageID.352).

Although counsel did not raise the arguments Defendant now asserts in his written motion to suppress, counsel essentially addressed those arguments at the suppression hearing. Defendant fails to describe, and the Court fails to discern, how any further argument by counsel regarding the legality of the *Terry* stop would have altered the Court's decision to conclude that the *Terry* stop was reasonable and deny the motion to suppress. Accordingly, Defendant is not entitled to relief with respect to ground IX.

**H.      Claims Raising Ineffective Assistance Regarding Jury Instructions**

**1.      Ground V**

In ground V, Defendant faults counsel for failing to object "to jury instructions that constituted a[] constructive amendment of the Indictment after already [having] been returned by a grand jury." (§ 2255 Mot., ECF No. 1, PageID.30.) He suggests further that the Court erred by instructing the jury that Defendant did not have to know that the substance was heroin and only had to know that it was some kind of controlled substance. (*Id.*, PageID.31.)

The Indictment returned by the grand jury stated that on or about September 17, 2025, Defendant "did knowingly and intentionally possess with intent to distribute a substance containing a detectable amount of heroin." *See* Indictment, *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 11). The Court instructed the jury that to find Defendant guilty, it must find, *inter alia*, that "the defendant knowingly or intentionally possessed heroin." *See* Trial Tr., *id.* (ECF No. 62, PageID.781). Defendant's argument regarding this variance entirely lacks merit. "It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively." *United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983). Moreover, where a "statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive. The district court, however, can instruct the jury in the disjunctive." *United States v. Rhynes*, 196 F.3d 207, 242 (4th Cir. 1999), *vacated on other grounds on reh'g en banc*, 218 F.3d 310 (4th Cir. 2000). Any argument by counsel that the amendment was constructively amended by this instruction would not have been successful.

Defendant also takes issue with the following instruction: "To prove the defendant knowingly possessed the heroin, the defendant did not have to know that the substance was heroin. It is enough that the defendant knew that it was some kind of controlled substance." *See* Trial Tr., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 62, PageID.783). That

21

instruction, however, is directly taken from the Sixth Circuit's Pattern Jury Instructions. *See* 6th Cir. Pattern Jury Instruction 14.01(2)(B), *available at* https://www.ca6.uscourts.gov/pattern-jury-instructions (last visited Sept. 24, 2024). The Sixth Circuit has noted that "drug type and quantity are irrelevant to the mens rea element of § 841(a), which requires nothing more specific than an intent to distribute a controlled substance." *See United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003). Any objection by counsel otherwise would have been overruled by the Court. Moreover, Defendant fails to demonstrate any prejudice from counsel's failure to object to this instruction.

In sum, Defendant fails to demonstrate that counsel was ineffective for failing to object to the jury instruction that allegedly constructively amended the Indictment as well as the instruction that Defendant did not need to know that the substance in question was heroin. Accordingly, Defendant is not entitled to relief with respect to ground V.

### 2.      Ground VI

In ground VI, Defendant faults counsel for not objecting to the Court's jury instruction "regarding [Defendant's] right not to testify or present any evidence." (§ 2255 Mot., ECF No. 1, PageID.33.) Specifically, Defendant takes issue with the following instruction:

> A defendant has an absolute right not to testify or present evidence. The fact that he did not testify or present any evidence cannot be considered by you in any way. Do not even discuss it in your deliberations.

*See* Trial Tr., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich. (ECF No. 62, PageID.785). Defendant suggests that this instruction invaded the province of the jury because the jury may have wanted to consider that "the government's case was so weak against [Defendant] that he did not have to testify or present any evidence." (§ 2255 Mot., ECF No. 1, PageID.33.) Defendant suggests that counsel should have requested a "curative instruction . . . informing the jury that it could not adversely consider against [Defendant] that he did not testify or present any evidence." (*Id.*)

Any objection to this portion of the jury instruction noted above by counsel would have been meritless. The sentence in question is taken directly from the Sixth Circuit's Pattern Jury Instructions. *See* 6th Cir. Pattern Jury Instruction 7.02A, *available at* https://www.ca6.uscourts.gov/pattern-jury-instructions (last visited Sept. 24, 2024). The Sixth Circuit has "routinely found that instructions are not plainly erroneous where they track the circuit's pattern jury instructions." *United States v. Katuramu*, 174 F. App'x 272, 279 (6th Cir. 2006). Defendant also fails to demonstrate prejudice from counsel's failure to object to this instruction. Because counsel did not render ineffective assistance by failing to object to this instruction, Defendant is not entitled to relief with respect to ground VI.

### 3.    Ground VII

In ground VII, Defendant faults counsel for failing to object to the Court's jury instruction "regarding possible guilt of others." (§ 2255 Mot., ECF No. 1, PageID.34.) Specifically, Defendant takes issue with the following instruction:

> Also keep in mind that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty. Do not let the possible guilt of others influence your decision in any way.

*See* Trial Tr., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 62, PageID.781). Defendant essentially asserts that this instruction undermined the defense theory that someone else placed the heroin in the toilet tank.

As an initial matter, the jury instruction in question is taken directly from the Sixth Circuit's Pattern Jury Instructions. *See* 6th Cir. Pattern Jury Instruction 2.01(3), *available at* https://www.ca6.uscourts.gov/pattern-jury-instructions (last visited Sept. 24, 2024). As noted above, the Sixth Circuit has "routinely found that instructions are not plainly erroneous where they track the circuit's pattern jury instructions." *Katuramu*, 174 F. App'x at 279.

To be sure, the Sixth Circuit has recognized that prejudice can result from instructing the jury that the possible guilt of others is not a defense to a criminal charge, particularly in a case where the defense's theory is based upon the possible guilt of another individual. *See United States v. Farrow*, 574 F. App'x 723, 730–31 (6th Cir. 2014). Defendant, however, has not demonstrated any prejudice from counsel's failure to object to this instruction. Immediately after giving that instruction, the Court then set forth the elements of the offense, explicitly noting that the jury had to find that the "government has proved each and every one of the following elements beyond a reasonable doubt." *See* Trial Tr., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 62, PageID.781). Moreover, during closing arguments, Defendant's counsel asserted that the government failed to look for other potential suspects, therefore, as argued by counsel, undermining the outcome. *See id.*, (ECF No. 62, PageID.67). Moreover, evidence presented during trial demonstrated that the last person to enter the bathroom where the heroin was found did so at 11:55 a.m., almost two hours before Defendant entered the bathroom. *See id.*, (ECF No. 62, PageID.612, 634). The heroin was not fully saturated when it was recovered, suggesting that it had only been in the tank for a short period of time. *See id.*, (ECF No. 62, PageID.619–621). In light of the foregoing, the Court cannot agree with Defendant that counsel was ineffective for failing to object to the instruction regarding possible guilt of others. Defendant, therefore, is not entitled to relief with respect to ground VII.

### 4.    Ground VIII

In ground VIII, Defendant contends that counsel was ineffective for failing to object to the Court's jury instruction "regarding what the law requires the government to prove as to the element of intent." (§ 2255 Mot., ECF No. 1, PageID.38.) Specifically, Defendant takes issue with the following instruction:

> In determining whether the defendant had the intent to distribute, you may consider all of the facts and circumstances shown by the evidence, including the defendant's words and actions. Intent to distribute can be inferred from the possession of a large quantity of drugs, too large for personal use alone. You may also consider the estimated street value of the drugs, the purity of the drugs, the manner in which the drugs were packaged, the presence or absence of a large amount of cash, the presence or absence of weapons, and the presence or absence of the equipment used for the sale of drugs. The law does not require you to draw such an inference, but you may draw it.

*See* Trial Tr., *United States v. Morton*, No. 1:19-cr-108 (W.D. Mich.) (ECF No. 62, PageID.783). Defendant takes issue with the last sentence cited above, arguing that "[c]ounsel knew or should have known that the [C]ourt is only authorized to instruct the jury <u>based on what the law requires</u> them to consider, not what they are not required to consider, but then instruct them that they may do it anyway." (§ 2255 Mot., ECF No. 1, PageID.38.)

Any objection to this portion of the jury instruction noted above by counsel would have also been meritless. The sentence in question is taken directly from the Sixth Circuit's Pattern Jury Instructions. *See* 6th Cir. Pattern Jury Instruction 14.01(3), *available at* https://www.ca6.uscourts.gov/pattern-jury-instructions (last visited Sept. 24, 2024). Again, jury instructions "are not plainly erroneous where they track the circuit's pattern jury instructions." *Katuramu*, 174 F. App'x at 279. Defendant also fails to demonstrate prejudice from counsel's failure to object to this instruction. Because counsel did not render ineffective assistance by failing to object to this instruction, Defendant is not entitled to relief with respect to ground VIII.

### 5.    Ground XI

In ground XI, Defendant faults counsel for "not requesting a jury instruction as to physical or material evidence that was not tested by law enforcement officers for DNA results on the issue of identity and reasonable doubt." (§ 2255 Mot., ECF No. 1, PageID.45.) Defendant states that Dale Gooden, the Supervisor of the Controlled Substance Unit of the Michigan State Police Forensics Lab, testified that "had the original bag the heroin was contained in when Detective

Hartman found it in the top of the toilet tank had not been switched out into another bag, then an analyst could have tested the original bag for DNA [a]nalysis." (*Id.*) Essentially, Defendant faults counsel for not requesting a spoliation instruction. (*Id.*)

"Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004) (citation omitted). Intentional destruction is defined "not as a knowing and willful removal of evidence, but as removal with the 'purpose of rendering it inaccessible or useless to the defendant in preparing its case; that is, spoiling it." *Id.* (quoting *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999)). "Willful spoliation of relevant evidence is generally punished by an adverse-inference jury instruction." *See Webb v. United States*, 789 F.3d 647, 669 (6th Cir. 2015). However, to be entitled to such an instruction, the party seeking it must show that the government acted in bad faith. *See Boxley*, 373 F.3d at 763.

Here, any suggestion by Defendant that the government acted in bad faith by not retaining the bag that the heroin was found in is based solely upon speculation. As set forth above, the bag that was located in the toilet tank had a small hole, and water had seeped into the bag, causing the heroin inside to become wet. Given that fact, it was entirely reasonable for law enforcement officials to place the heroin into another bag and not retain the original bag. There is simply nothing in the record to support a conclusion that officers acted in bad faith by not retaining the original bag. Accordingly, any request by Defendant's counsel for a spoliation instruction would not have succeeded. Defendant, therefore, is not entitled to relief with respect to ground XI.

## I.    Ground X—Failure to Move for Judgment of Acquittal

In his tenth ground for relief, Defendant faults counsel for failing to move for a judgment of acquittal on the grounds that when the Court allowed the government to reopen its case so that Detective Hartman could identify Defendant, the Court failed to readminister the oath to Detective

Hartman. (§ 2255 Mot., ECF No. 1, PageID.44.) Defendant suggests that because the oath was not readministered to Detective Hartman, the government "still legally failed to establish the issue of identity on a valid record." (*Id.*)

The record reflects that after the government rested, attorney Tilton made a motion for a judgment of acquittal. *See* Trial Tr., *United States v. Morton*, 1:19-cr-108 (W.D. Mich.) (ECF No. 62, PageID.742). One argument that attorney Tilton raised is that the government had not presented any witnesses that actually identified Defendant. *See id.* In response, the government noted that Defendant had been identified by his fingerprint card and in court, but requested to reopen the proofs to have Detective Hartman identify Defendant if the Court had any concerns. *See id.*, (ECF No. 62, PageID.743). The Court noted that the defense was correct that "no witness pointed to [Defendant] during the course of the trial; however, the video shows the individual that the officers confronted in the hallway of the Comfort Inn." *See id.*, (ECF No. 62, PageID.746). The Court denied attorney Tilton's motion for a judgment of acquittal. *See id.*

Attorney Tilton then objected to the government being allowed to reopen its case to allow Detective Hartman to identify Defendant. *See id.* The Court granted the government's request for that limited purpose, and attorney Tilton renewed his motion for a judgment of acquittal. *See id.*, (ECF No. 62, PageID.747). The Court denied it, stating "[s]ame result obviously." *Id.* When the jury returned, the government recalled Detective Hartman. Before Detective Hartman took the stand, the Court stated, "Sergeant Hartman, your oath still applies, sir." *See id.*, (ECF No. 62, PageID.749). Detective Hartman then identified Defendant in the courtroom. *See id.*, (ECF No. 62, PageID.750).

Defendant has not cited, and the Court has not located, any authority suggesting that a witness must be re-sworn, instead of being reminded of his or her prior oath, each time he or she

retakes the witness stand. *Cf. United States v. Key*, 13 F. App'x 461, 466 (8th Cir. 2001) (rejecting the defendant's argument that a court must "readminister an oath to a defendant each time the district court has a question for the defendant after the defendant has testified under oath and left the witness stand"). Given the lack of authority, the Court cannot agree with Defendant that counsel was ineffective for failing to move for a judgment of acquittal on that basis. Defendant, therefore, is not entitled to relief with respect to ground X.

In sum, none of the arguments that Defendant sets forth in his § 2255 motion have merit. Counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"). The Court, therefore, will deny Defendant's § 2255 motion (ECF No. 1). Moreover, because the record conclusively establishes that Defendant is not entitled to relief, there is no need for the Court to conduct an evidentiary hearing. Accordingly, the Court will deny Defendant's motion for a hearing (ECF No. 13).

## III. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*,

529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## IV.   Conclusion

For the foregoing reasons, the Court will deny Defendant's § 2255 motion. Accordingly,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for a hearing (ECF No. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).

Dated:   September 26, 2024                          /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge